1

2

3

4                     UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    JULIUS W. LEWIS,                    Case No.  15-cv-02597-JD

8                    Petitioner,

9         v.                            **ORDER DENYING PETITION
                                        FOR WRIT OF HABEAS CORPUS
10   STU SHERMAN,                        AND DENYING CERTIFICATE
                                        OF APPEALABILITY**
11                   Respondent.

12

13        This is a habeas corpus petition filed pro se by a state prisoner pursuant to 28 U.S.C. §

14   2254.  The Court ordered respondent to show cause why the writ should not be granted.

15   Respondent filed an answer and a memorandum of points and authorities in support of it, and

16   lodged exhibits with the Court.  The petition is denied.

17                              **BACKGROUND**

18        A jury found petitioner, Julius W. Lewis, guilty of five counts of lewd and lascivious acts

19   on a child and he was sentenced to 29 years to life in prison.  Answer, Ex. 10 at 1.  The California

20   Court of Appeal affirmed the judgment in a partially published opinion on February 9, 2015.  *Id*.

21   On May 13, 2015, the California Supreme Court denied a petition for review.  Answer, Exs. 11,

22   12.

23        The California Court of Appeal summarized the facts of the crime as follows:

24             A. Angelina

25             In October 2005, when Angelina B. was five years old, she was
               placed in foster care with Lewis's friend, Lynett Palmer.  Palmer
26             had four or five other foster children in her home.  Lewis was living
               nearby with his wife, his daughters Monica and Melissa, and his
27             sons, J.L and N.L.  Angelina went to Lewis's home to play with his
               daughters, and Palmer left Angelina with Lewis when she ran
28             errands and went to school and church.

Angelina testified that, on about four or five occasions, Lewis asked her to come into his bedroom, took off her pants, and started "humping" her, leaving "white stuff" on the bed. He also sucked on her breasts. In August 2007, Angelina told Palmer what Lewis had done. Palmer noticed a "small speckled circle" on Angelina's left breast, and reported Angelina's allegation to a foster care worker. In a 2007 forensic interview, Angelina said that Lewis put his private part in her private part.

### B. Teresa

After Angelina disclosed her abuse, San Francisco police located Lewis's ex-wife in Texas, who reported that he had molested her daughter, Teresa C. Teresa was born in 1978, and lived in Texas until June or July of 1989, when she moved to San Francisco with her mother and Lewis. Teresa testified that Lewis began touching her breasts and between her legs when she was six or seven years old. When she was eight or nine, he began having sexual intercourse with her, progressing from once a month to a couple of times a week. He continued sexually abusing her one to three times a week in San Francisco in August, September, and October of 1989. She remembered that he had sexual intercourse with her on October 17, 1989, the day of the Loma Prieta earthquake.

After the earthquake they returned to Texas, where Lewis continued to molest her. In the last incident, when she was between 11 and 13 years old, he put a knife to her throat and raped her. She did not recall a medical examination in July of 1991 when she tested positive for gonorrhea, and did not remember testifying before a Texas grand jury.

### C. Other Victims

L.W., born in 1978, testified that Lewis sexually abused her from the time she was three until age eight or nine. Lewis babysat her, and her family lived with his family for about a year. When she was three, he touched her vagina and had her touch his penis. When she was four, he digitally penetrated her vagina. When she was five, he began having intercourse with her. When she was seven, he began making her orally copulate him.

When Lewis learned that L.W. had told Teresa that she was going to report what he was doing, he twisted L.W.'s arm behind her back, put a gun to her head, and threatened to kill her and her mother if she told anyone what was happening. L.W. witnessed Lewis have intercourse with Teresa, and saw him try to penetrate another girl named Sabrina with his penis.

Sabrina A., born in 1977, testified that she was molested by Lewis when she was seven and eight years old. When her mother worked late, Sabrina stayed overnight at L.W.'s home, where Lewis was living. Lewis touched her vagina and made her touch his penis five or six times over a three-month period. He once tried, in L.W.'s presence, to penetrate Sabrina's vagina with his penis. A couple of days later Sabrina told her mother that Lewis had molested her and

L.W.

L.C., born in 1972, was Lewis's stepsister. L.C. testified that Lewis often forced her to have intercourse when he was age 19 or 20 and she was age nine. She eventually reported the abuse at school.

Answer, Ex. 10 at 2-3.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v.*

*Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Nunnemaker* at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

## DISCUSSION

As grounds for federal habeas relief, Lewis asserts that: (1) the trial court's jury instruction about the statute of limitations was erroneous; (2) his rights to due process and a speedy trial were violated by the 18-year pre-accusation delay concerning the crimes against Teresa C.; (3) his rights to a fair trial and to present a defense were violated when the trial court denied his motion to introduce evidence that Angelina B. was not a credible witness; (4) California Evidence Code section 1108 and California Criminal Jury Instruction ("CALCRIM") No. 1191 are facially unconstitutional; and (5) ineffective assistance of counsel.

### I.      STATUTE OF LIMITATIONS

Lewis first argues that the trial court erroneously instructed the jury as to one of the elements of the statute of limitations which was also an ex post facto violation.

**Background**

The California Court of Appeal summarized the factual background of this claim as follows:

> The statute of limitations for lewd and lascivious acts upon a minor under section 288 is six years. (§ 800.) Effective January 1, 1994, former section 803, subdivision (g)(1) provided that if the limitation period specified in section 800 had expired, "a criminal complaint may be filed within one year of the date of a report to a law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section . . . 288 . . . ." (Stats. 1993, ch. 390, §1, p. 2226; italics added.) In 1997, section 803, subdivision (g)(1) was amended to allow the filing of a complaint by such a victim within one year of a report to "a California law enforcement agency." (Stats. 1997, ch. 29, § 1, p.346; italics added.) The 1997 language is currently in section 803, subdivision (f)(1). (Stats. 2005, ch. 479, § 3, p. 3792.)

United States District Court
Northern District of California

Lewis argues that he had evidence to support a finding that Teresa reported his California crimes to a Texas law enforcement agency in 1991, and that her report in Texas qualified as a report within the meaning of the 1994 version of section 803, subdivision (g)(1), because that version, unlike the one enacted in 1997, did not expressly require that the report be made to a California law enforcement agency.

Lewis presented evidence to the court that Teresa told a Texas physician in July 1991 that he had raped her the previous month, and that in September 1991 he was indicted by a Texas grand jury for raping her on or about June 22, 1991.  The charge was dismissed in 1992 when the prosecution lost contact with Teresa, and no other records concerning the charge were preserved.  Although he was indicted in Texas only for a single count of rape, Lewis postulates that Teresa might have reported other abuse in addition to the rape, including his molestations of her while they lived in California in 1989.  Lewis maintains that he should have been able to argue this point to the jury, and that if the jury found his California crimes were reported to Texas law enforcement in 1991, then prosecution for those crimes would have been barred by the statute of limitations.

The People argue that it would be entirely speculative to infer from the evidence Lewis cites that Teresa told Texas law enforcement about her molestations in California.  For purposes of this opinion, we will assume that the evidence was sufficient to support such an inference, and that Lewis's offenses against Teresa could have been found to be time barred if his interpretation of the statute is correct.  An operative report to law enforcement in 1991, long before the running of the six-year statute, would not have extended the 1995 deadline for prosecution of the 1989 crimes. "The effect of subdivision (g) is to permit prosecution of sexual offenses with a juvenile victim within six years of the offense or one year of the victim's report of the offense, whichever is later."  (*People v. Vasquez* (2004) 118 Cal.App.4th 501, 503-505 [interpreting the 1997 version of § 803 subd. (g)(1), fn. omitted].)  If the statute of limitations expired in 1995, the deadline could not thereafter be extended without violating the prohibition against ex post facto laws.  (*Stogner v. California* (2003) 539 U.S. 607, 609 [the ex post facto prohibition precludes resurrection of prosecutions that are time barred when the new law is enacted].)

The People argue that the 1997 amendment to section 803, subdivision (g)(1) expressly requiring a report to a "California" law enforcement agency did not change the law as Lewis claims, but merely clarified it.  If the 1997 amendment simply clarified the 1994 law, then it could be applied without violating the ex post facto prohibition, and a Texas report would not have triggered the running of the statute's one-year period, even under the 1994 version.  (See *Weaver v. Graham* (1981) 450 U.S. 24, 29 (to be ex post facto a criminal law must be retrospective); *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [a statute that clarifies existing law does not operate retrospectively].)

The People also argue Lewis's interpretation of the 1997 amendment is "implausible." As the People put it in their brief: "According to appellant's construction, the Legislature in 1994 *intended* to start the statute of limitations running upon a report to law enforcement in *any* other state or country, and intended to impose an impossible duty on the local district attorneys to find, within one year, any national or international sexual assault reports that might have been made. Appellant's construction would also mean that the Legislature decided in 1997 that it no longer wanted to impose such a burden on local jurisdictions and modified the law accordingly."

The issue was litigated at trial and the court agreed with the People. The testimony showed that Teresa reported her molestation in California to the San Francisco police on September 27, 2007. The complaint against Lewis was filed on December 3, 2007, within one year of Teresa's report. The jury was instructed: "If you find . . . the defendant guilty on any of the counts [involving Teresa] . . . , you must further determine as to each count . . . whether the people have proved all [of] the following by a preponderance of evidence: [¶] One, on September 27, 2007, Teresa C. first reported to a California law enforcement agency that while under the age of 18, she was the victim of lewd and lascivious acts upon a minor under 14; [¶] Two, a complaint accusing the defendant of the crimes [against Teresa] was filed on or before September 27, 2008 . . . ."

Answer, Ex. 10 at 3-6.

**Legal Standard**

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. *See Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985). Federal habeas relief is unavailable for violations of state law or for alleged error in the interpretation of application of state law. *See Swarthout v. Cooke*, 562 U.S. 216, 220 (2011); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"). A federal court will examine a state court's interpretation of its laws or constitution only where it is clearly shown that such state judicial interpretations violate fundamental rights guaranteed by the Constitution of the United States. 28 U.S.C. 2241(c) (1959); *See Bonin v. Calderon,* 59 F.3d 815, 841 (9th Cir. 1995).

A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v. Feiock*, 485 U.S. 624, 629 (1988). The state's highest court is the final authority on the law of that state. *Sandstrom v. Montana,* 442 U.S. 510, 516-17 (1979). A determination of state law made by an intermediate appellate court must also be followed and may

6

not be "'disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'"  *Hicks v. Feiock,* 485 U.S. 624, 630 n.3 (1988) (quoting *West v. Am. Tel. & Tel. Co.,* 311 U.S. 223, 237-38 (1940)).

Accordingly, a challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991).  Even if the claim is cognizable, to obtain federal collateral relief for errors in the jury charge, a petitioner must show that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  *Id.* at 72 (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)).  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  *Id.*  Petitioner also must show actual prejudice from the error, i.e., that the error had a substantial and injurious effect or influence in determining the jury's verdict, before the court may grant federal habeas relief. *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

The U.S. Constitution prohibits the federal government and the states from passing any "ex post facto law."  U.S. Const. art. I, § 9, cl. 3 (federal government); Id., § 10, cl 1 (states). These clauses prohibit the government from enacting laws with certain retroactive effects.  Id.; *Landgraf v. USI Film Products*, 511 U.S. 244 (1994).  The *Landgraf* test prescribes a two-part test in deciding when a statute operates "retroactively."  *Dep't of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 99 F. Supp. 2d 1123, 1127 (citing *Landgraf*, 511 U.S. 244 (1994)).

A second approach has developed in case law based on whether the statute is a clarification or a change of existing law.  "If the statute is a clarification, it 'accurately restates the prior law' and there is no need for a *Landgraf* analysis because the statute has no retroactive effect."  *Dep't of Toxic Substances Control*, 99 F. Supp. 2d at 1129 (quoting *Piamba Cortes v. Am. Airlines, Inc.,* 177 F.3d 1272, 1283 (11th Cir. 1999)) ("[C]oncerns about retroactive application are not implicated when an amendment that takes effect after the initiation of a lawsuit is deemed to clarify relevant law rather than effect a substantive change in the law.") (alteration in original).

Various factors should be reviewed when determining if an amendment clarifies, rather than effects a substantive change to, prior law.  *Id.*  "A significant factor is whether a conflict or

7

ambiguity existed with respect to the interpretation of the relevant provision when the amendment was enacted.  If such an ambiguity existed, courts view this as an indication that a subsequent amendment is intended to clarify, rather than change, the existing law." *Id.* at 1283–84 (citing *Liquilux Gas Corp. v. Martin Gas Sales,* 979 F.2d 887, 890 (1st Cir. 1992)).  The court should give weight to a statement by the legislature that its intent was to clarify a prior enactment.  *Id.* at 1284.

**Discussion**

The California Court of Appeal set forth the relevant state law on the admission of evidence and then denied this claim:

> Lewis notes that the 1994 version of section 803, subdivision (g)(1) is unambiguous and that, when a statute's language is clear, the plain meaning ordinarily controls.  (*People v. Sisuphan*, supra, 181 Cal.App.4th at p. 806.)   He further observes that statutory amendments are ordinarily considered to change the meaning of the law.  (*Hatch v. Superior Court* (2000) 80 Cal.App.4th 170, 226.)  In this instance, however, those rules of construction must yield to the more fundamental rule requiring that statutes receive a reasonable, practical construction consistent with their apparent purpose.  (See *People v. Zambia* (2011) 51 Cal.4th 965, 972; see also *People v. Robertson* (2003) 113 Cal.App.4th 389, 393 [" '[w]hile an intention to change the law is usually inferred from a material change in the language of the statute [citations], a consideration of the surrounding circumstances may indicate, on the other hand, that the amendment was merely the result of a legislative attempt to clarify the true meaning of the statute' "].)   The People's critique of Lewis's argument is entirely persuasive.

> Additional support for our conclusion appears in the 1994 version of section 803.  Subdivision (f) stated: "Notwithstanding any other limitation of time described in this section, a criminal complaint may be filed within one year of the date of a report to a responsible adult or agency by a child under 18 years of age that the child is a victim of a crime described in Section . . . 288 . . . .  [¶] For purposes of this subdivision, a 'responsible adult' or 'agency' means a person or agency required to report pursuant to Section 11166. . . . " (Stats. 1993, ch. 390, § 1, p. 2225.) The cross-reference to mandated reporters who come within section 11166 in the second quoted paragraph makes it clear that the words "responsible adult or agency" in the first paragraph meant a "responsible California adult or agency," because California has no authority to mandate reports by adults or agencies in other states.  (See *Bonaparte v. Tax Court* (1881) 104 U.S. 592, 594 ["[n]o state can legislate except with reference to its own jurisdiction"]; *Bigelow v. Virginia* (1975) 421 U.S. 809, 824 [a state does not have "power or supervision over the internal affairs of another state"].)  The modifier "California" was implicit in subdivision (g)'s reference to "law enforcement agency,"

just as it was implicit in the reference to "responsible agency" in the first paragraph of subdivision (f), because subdivision (g), like subdivision (f), was likely referring to agencies under California jurisdiction. (See *McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110 [the words in a statute " 'must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible' "].)

The legislative history lodged in the trial court of the 1997 amendment to section 803, subdivision (g)(1) further supports our conclusion. Addition of the word "California" in subdivision (g)(1) was not discussed, indicating that the change was not considered material. (See, e.g., Sen. Com. on Public Safety Bill Analysis of Assem. Bill No. 700 (1997-1998 Reg. Sess.) as amended June 3, 1997.)

For these reasons, we conclude that the jury was correctly instructed on the statute of limitations.

Answer, Ex. 10 at 6-8.

Lewis' federal constitutional claim rests entirely on his statutory interpretation of state law section 803(g)(1). The California Court of Appeal considered his argument, and rejected it, concluding that the trial court properly instructed the jury that a "law enforcement agency" under section 803(g)(1) was limited to a California law enforcement agency. Answer, Ex. 10 at 8. Since Lewis is challenging the jury instruction solely as an error under state law, it does not state a cognizable federal claim. *See Estelle,* 502 U.S. at 67-68. The state court's interpretation of section 803, defining "a law enforcement agency" to narrowly mean a "California law enforcement agency," is binding here. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Lewis is not entitled to federal habeas relief.

The Court may still review the state appellate court's interpretation of section 803 for a violation of Lewis' fundamental rights. He argues that the alleged erroneous jury instruction affected his substantial right because had the jury been instructed that a report to "a law enforcement agency" triggered the one-year extension of the statute of limitations provided for in section 803, the prosecution would fail to prove that the complaint was filed within the statute of limitations. But even assuming that the claim is cognizable and that the trial court had erred in instructing the jury on the requirements for the extended statute of limitations under section 803, Lewis is unable to show that he was prejudiced by the court's inclusion of the word "California"

1    in the instruction.

2         The one-year statute of limitations in section 803 is triggered by the victim's report of the

3    abuse to a law enforcement agency.  The evidence showed that Teresa revealed during a medical

4    examination in Texas that Lewis had raped her in June 1991 while in Texas.  She did so only after

5    being informed that she had tested positive for gonorrhea.  Answer, Ex. 8 at 6-8, 31.  There was no

6    evidence that she reported any crimes that occurred in California, and Lewis only speculates that it

7    was possible that she did.  Lewis' conclusory allegations do not warrant habeas relief.  *James v.*

8    *Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

9         Lewis also argues that the amendment of section 803 from "law enforcement agency" to

10   "California law enforcement agency" was a substantive change in the law and its application to his

11   case violates the Ex Post Facto Clause.  However, the application of the 1997 version of section

12   803 does not violate the Ex Post Facto Clause because the legislative history reveals that the 1997

13   version is a clarification of the 1994 version rather than an attempt to change the law.  *See*

14   Answer, Ex. 10 at 5-8.  As the court of appeals reasoned, the literal interpretation of the 1994

15   statute would not further the legislative intent to effectively extend the statute of limitations in

16   child molestation cases because California law enforcement authorities may never learn of, and be

17   able to act on, reports by victims to law enforcement authorities in other jurisdictions.  *Id.*

18        **II.      PRE-INDICTMENT DELAY**

19        Lewis contends that the 18-year delay between the alleged crimes against Teresa and the

20   filing of the complaint against him violated his due process rights and right to a speedy trial.

21        **Legal Standard**

22        The Sixth Amendment right to a speedy trial does not attach until arrest or indictment.

23   *Betterman v. Montana*, 136 S. Ct. 1609, 1613 (2016); *United States v. Marion*, 404 U.S. 307, 320

24   (1971) (right does not arise until after there has been a "formal indictment or information or else

25   the actual restraints imposed by arrest and holding to answer a criminal charge").  Before arrest or

26   indictment, "statutes of limitations provide the primary protection against delay, with the Due

27   Process Clause as a safeguard against fundamentally unfair prosecutorial conduct."  *Betterman*,

28   136 S. Ct. at 1613.  Pre-indictment delay is permissible "unless it violates fundamental

United States District Court
Northern District of California

conceptions of justice which lie at the base of our civil and political institutions." *United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985).

Pre-indictment delay is tested by "general proscriptions of due process." *Prantil v. California*, 843 F.2d 314, 318 (9th Cir. 1988) (per curiam) (internal quotation marks omitted).  In determining whether a pre-indictment delay violated due process, courts apply a two-part test: (1) Petitioner must prove actual, nonspeculative prejudice from the delay; and (2) the length of the delay, when balanced against the reasons for the delay, must offend those "fundamental conceptions of justice which lie at the base of our civil and political institutions." *See United States v. DeGeorge*, 380 F.3d 1203, 1210-11 (9th Cir. 2004) (quoting *United States v. Doe*, 149 F.3d 945, 948 (9th Cir. 1998)).  A defendant claiming pre-indictment delay carries a "heavy burden" of showing actual prejudice that is "definite and not speculative." *United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985) (as amended).  Unless the petitioner can demonstrate actual prejudice, the Court "need not weigh the reasons for the delay versus its length." *See United States v. Ross*, 123 F.3d 1181, 1186-87 (9th Cir. 1997) (as amended).

Proof of prejudice is "rarely met," and it must be definite and not speculative.  *Unites States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007) (internal quotations omitted); *see, also, United States v. Gregory*, 322 F.3d 1157, 1165 (9th Cir. 2003) (possibility that the government might use a prior conviction in an earlier superseded indictment for impeachment purposes and possibility that defendant lost the opportunity to have his offenses grouped for sentencing purposes are not the types of prejudice that violate the guarantee against excessive pre-indictment delay); *United States v. Ross*, 123 F.3d 1181, 1185-86 (9th Cir. 1997) (witness' death before trial did not amount to actual prejudice because the expected content of his testimony was speculative and cumulative).  "Generalized assertions of the loss of memory, witnesses, or evidence are insufficient to establish actual prejudice." *United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995).  Moreover, a specific claim of lost testimony or lost witnesses will not satisfy the "actual prejudice" prong if the indictment is brought within the statute of limitations, or if the defendant fails to make a specific showing as to what a lost witness would have said. *Corona-Verbera*, 509 F.3d at 1113 (finding actual prejudice not established where indictment

delayed five years).

**Discussion**

The California Court of Appeal set forth the relevant state law and denied this claim:

> Lewis moved in the trial court to dismiss the charges involving Teresa, arguing that the lapse of time between the crimes and the filing of the complaint deprived him of due process. The court denied the motion on the ground that any delay was not caused by any state action. Lewis maintains that the court erred in denying the motion, and that we must independently review the ruling because it was based on the wrong legal standard.
>
> . . .
>
> We will assume for purposes of our analysis that due process can be denied by a delayed prosecution even if the state is not responsible for the delay, that the court thus applied the wrong standard when it denied the motion to dismiss, and that this error requires us to review the ruling on the motion de novo. Exercising that review, we conclude there was no deprivation of due process. The delay in this case was fully justified. The 1989 crimes were not reported to California law enforcement until 2007, and the prosecution was initiated promptly after the report was made. Consequently, a very strong showing of prejudice was required (*People v. Dunn–Gonzalez, supra,* 47 Cal. App. 4th at p. 915, 55 Cal. Rptr. 2d 404), and Lewis has not made one.
>
> Lewis argues that he was prejudiced by the loss of the child welfare agency, police, prosecution, and court records of his 1991 Texas indictment and related investigation because those records "would plausibly have shown that the statute of limitations had expired." However, as we have explained, Lewis would not have been assisted by records showing that Teresa reported the abuse she suffered in California to Texas law enforcement in 1991 because a report to California authorities was required to trigger the running of the statute of limitations in section 803.
>
> Lewis argues in his reply brief that the lost records might have contained information he could have used to impeach Teresa's testimony about the molestations she suffered in Texas. He notes that "[d]espite Teresa describing years of abuse in Texas from the witness stand, the Texas grand jury indictment against [him] contained only one charge: a single count of penetration." He continues: "Had the Texas grand jury heard a story remotely similar to the one heard by [his] California jury, [he] would have been charged with more than a single Texas crime. [¶] Likewise, were the transcripts for the Texas grand jury and the Texas police reports still in existence, [he] would have most likely been able to undermine Teresa's credibility with the discrepancies between the different versions of her story." He argues that he was prejudiced because "Teresa's credibility as a witness depended on the jury believing her entire story. Being able to discredit the Texas part of her testimony would have also caused the jury to doubt the San

1    Francisco part of her testimony."

2    The problem with this line of argument is that it is wholly
     speculative. Our Supreme Court has repeatedly found speculative
3    arguments inadequate to establish the actual prejudice required for
     delayed prosecution to constitute a due process violation. (*People v.*
4    *Jones* (2013) 57 Cal. 4th 899, 923, 161 Cal. Rptr. 3d 295, 306 P.3d
     1136; *People v.* Abel (2012) 53 Cal. 4th 891, 909, 138 Cal. Rptr. 3d
5    547, 271 P.3d 1040; *People v. Alexander* (2010) 49 Cal. 4th 846,
     875–876, 113 Cal.Rptr.3d 190, 235 P.3d 873.) Since the delay in
6    prosecution was completely justified and the possible prejudice was
     entirely speculative, the justification for delay outweighed the
7    possible harm and the motion to dismiss for deprivation of due
     process was correctly denied.

8    Answer, Ex. 10 at 8-10.

9         Lewis has failed to demonstrate that the state court denial was objectively unreasonable.

10   Lewis has not shown that the delay caused actual, nonspeculative prejudice. The state court

11   specifically found that Lewis' argument was wholly speculative which was insufficient to

12   demonstrate actual prejudice. In this federal habeas petition, Lewis has not shown that the state

13   court's decision was an unreasonable application of Supreme Court authority or an unreasonable

14   determination of the facts. A review of the record supports the state court determination. Lewis

15   only presents general arguments that lost records could potentially have helped his case. These

16   speculative arguments are insufficient based on the legal standards set forth above.[1]

17        Lewis has not identified any Supreme Court case dismissing a conviction based on pre-

18   indictment delay, and it is rare among the circuits. *See*, *e.g.*, *United States v. Huntley*, 976 F.2d

19   1287, 1290 (9th Cir. 1992) ("The task of establishing the requisite prejudice for a possible due

20   process violation is 'so heavy' that we have found only two cases since 1975 in which any circuit

21   has upheld a due process claim."); *Aleman v. Judges of the Cir. Ct.*, 138 F.3d 302, 309 (7th Cir.

22   1998) ("Neither the Supreme Court nor our Circuit has ever held a pre-indictment delay to be

23   unconstitutional, and Aleman's case [involving 21-year delay] will not be the first."); *United*

24   *States v. Foxman*, 87 F.3d 1220, 1224 n.4 (11th Cir. 1996) ("We also observe that dismissing an

25   _____

26        [1] Moreover, as noted in the previous claim, there is no evidence that the California crimes
     were even reported to authorities in Texas. Nor does Lewis argue that California authorities were
27   aware of the crimes before they were reported to California authorities in 2007 and then charges
     were promptly filed.
28

United States District Court
Northern District of California

indictment under the Due Process Clause for pre-indictment delay is rare.  In fact, so far as we can tell, we have never concluded that such a dismissal was appropriate.")  For all these reasons, this claim is denied.

### III.    RIGHT TO PRESENT A DEFENSE

Lewis contends that the trial court violated his right to a fair trial and right to present a defense by excluding evidence to impeach the victim's, Angelina's, credibility.

### Background

The California Court of Appeal summarized the factual background of this claim as follows:

> Lewis argues that the court erred in excluding evidence involving Angelina's possible molestation by his sons, J.L. and N.L.
>
> The defense obtained records pertaining to Angelina from an earlier juvenile proceeding.  Those records included a report by a psychotherapist that indicated in December 2007, just four months after she accused Lewis of molesting her, Angelina said that his sons J.L. and N.L. had done "nasty things" to her.  In August 2007, the eldest of the boys, J.L., was nine years old.  A hearing was held on the admissibility of evidence of Angelina's prior sexual conduct.  In that hearing, Angelina testified that doing "nasty things" meant things that were "mean" or "disgusting" such as "touch[ing] your privates."  But she also testified that she could not recall that J.L. and N.L. had done any such things or that she ever reported that they had.  At the end of the hearing, the court ruled preliminarily that Angelina's possible false allegations of abuse would be admissible subject to consideration of Evidence Code section 352.
>
> During a break in Angelina's cross-examination at trial, her guardian appeared and asserted on her behalf the therapist-patient privilege against admission of her report of abuse by J.L. and N.L.  The prosecutor agreed that Angelina could be cross-examined about abuse by J.L. and N.L., "subject to a motion to strike . . . if the Court later finds that that evidence should not be admissible for whatever reason . . . ."  Angelina was asked whether the boys had ever touched her privates or done anything nasty to her, and testified that she did not remember.
>
> Evidence of possible abuse by the boys was further addressed in a hearing before the defense rested its case.  Family therapist Ilene Yasemsky appeared with counsel and produced "suspected child abuse reports" dated December 7 and 12, 2007, which the court filed as sealed Court Exhibit 1.  The December 12 document stated: "Angelina reported . . . that Mr. Lewis' sons, [N.L.] & [J.L.], also did 'nasty things' to her like Mr. Lewis.  She said she told her foster mother, Lynette Palmer ("Nanny") . . . it had been happening for a long time & that she was afraid to tell (because she might get in trouble)."  After reviewing the documents in camera, the court advised that it found a report, presumably the one just quoted, to be

14

"relevant to the issues that . . . were the reasons [the defense] subpoenaed Ms. Yasemsky," and noted that Yasemsky was asserting the therapist-patient privilege to exclude the report.

Also present at the hearing was counsel for J.L., who appeared for N.L. as well as J.L.  He moved to quash defense subpoenas of both minors.  The motions to quash were supported by declarations from the minors' therapists, filed under seal, opining that the minors should be found to be unavailable as witnesses because of the psychological damage they would suffer if they were required to testify.  Counsel advised that he would instruct J.L. to "assert his Fifth Amendment right" against self-incrimination "[i]f questions are put to [J.L.] regarding any sexual contact with anyone."  The court asked whether "the reason you are asserting the privilege is that you feel that there may be items that would incriminate your client?" and counsel answered, "Correct."  Counsel indicated that N.L. would also be invoking his privilege against self-incrimination.

The court initially thought that Lewis's right to confront witnesses might outweigh any privilege against disclosure of Yasemsky's report, at least if the allegations in the report were false.  But the court noted that J.L. and N.L. "would likely be [asserting] a Fifth Amendment privilege," and reasoned that Yasemsky's report had little or no probative value under Evidence Code section 352 without the minors' testimony.  Lewis's counsel "remind[ed] the Court that we had actually offered the allegation by Angelina under two theories of relevance: [¶] One, that it was false. [¶] And, two, that the fact that she didn't even remember making the allegation and couldn't say whether they had or they had not, in fact, touched her went to her memory and her truthfulness and her character as a witness, which I think, therefore, that does not implicate [N.L.] and [J.L.]."  Defense counsel also "obect[ed] to the Court considering a Fifth Amendment privilege which hasn't been invoked as part of the 352 analysis."  The prosecutor agreed that "it would be error to consider the Fifth Amendment privilege until it is actually invoked . . . [¶] . . . on the stand," and until that time "you can't consider [the privilege] for 352 analysis."  However, looking at the issue from "a commonsensical point of view," the court found that the Fifth Amendment privilege "would apply," and decided "to stick with my inclination. This is overruling both parties. [¶] Given . . . the assertion or the characterization of the accusation as false, given the right of the District Attorney to cross-examine whether it is false or not, given the assertion [of the Fifth Amendment privilege] that I anticipate or that I've been advised by counsel that will follow, given the significant trauma that would be visited on the minors if they were called to testify, I am going to find that the probative value of the statement, of the accusation does not outweigh [its prejudicial] effects."

The court further articulated its decision as follows: "I find that the probative value of [the] evidence [offered by the defense to impeach Angelina] is diminished and is outweighed by the efforts, one, to get it in. [¶] And, two, the significant impact of that probative value given what will come in in response to it."

> In the wake of this ruling, the court granted the prosecutor's request to strike Angelina's testimony about possible abuse by J.L. and N.L. "from the record so it does not become part of any readback."

Answer, Ex. 10 at 10-12.

### Legal Standard

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991).

Whether grounded in the Sixth Amendment's guarantee of compulsory process or in the more general Fifth or Fourteenth Amendment guarantee of due process, "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)); *see California v. Trombetta*, 467 U.S. 479, 485 (1984) (due process); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) (compulsory process).

The constitutional right to present a complete defense includes the right to present evidence, including the testimony of witnesses. *See Washington v. Texas*, 388 U.S. 14, 19 (1967). But the right is only implicated when the evidence the defendant seeks to admit is "relevant and material, and . . . vital to the defense." *Id*. at 16. Additionally, a violation of the right to present a defense does not occur any time such evidence is excluded, but rather only when its exclusion is "arbitrary or disproportionate to the purposes [the exclusionary rule applied is] designed to serve." *Holmes*, 547 U.S. at 324 (internal quotation marks omitted). This is true even if the rule under which it is excluded is "respected[,] . . . frequently applied," and otherwise constitutional. *Chambers*, 410 U.S. at 302. If the "mechanical" application of such a rule would "defeat the ends of justice," then the rule must yield to those ends. *Id*. Still, "[o]nly rarely" has the Supreme Court held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence. *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (citing *Holmes*, 547 U.S. at 331) (rule did not rationally serve any discernible purpose); *Rock v. Arkansas*, 483 U.S. 44, 61 (1987) (rule arbitrary); *Chambers*, 410 U.S. at 302-03 (state did not even attempt to

explain the reason for its rule); *Washington*, 388 U.S. at 22 (rule could not be rationally defended)).

The admission of extrinsic evidence of specific instances of a witness' conduct to impeach the witness' credibility may confuse the jury, unfairly embarrass the victim, surprise the prosecution and unduly prolong the trial. No Supreme Court decision "clearly establishes that the exclusion of such evidence for such reasons in a particular case violates the Constitution." *Jackson*, 133 S. Ct. at 1994 (also rejecting Ninth Circuit's reasoning that Supreme Court cases clearly establish that Constitution requires a case-by-case balancing of interests before state evidentiary rule can be enforced). A violation of the right to present a defense merits habeas relief only if the error was likely to have had a substantial and injurious effect on the verdict. See *Lunbery v. Hornbeak*, 605 F.3d 754, 762 (9th Cir. 2010) (citing *Brecht*, 507 U.S. at 637-38).

**Discussion**

The California Court of Appeal denied this claim:

Lewis contends that the court erred in excluding evidence that his sons possibly abused Angelina, and that he was prejudiced by the error because the evidence was relevant to her credibility. He argues: "If [N.L.] or [J.L.] were to testify that they had sexual contact with Angelina, it would have impeached Angelina's credibility by directly contradicting her testimony that she did not have any sexual contact with them. If [N.L.] and [J.L.] had testified that they never had sexual contact with Angelina, then [he] could have called Ilene Yasemsky who reported Angelina's allegations that [N.L.] and [J.L.] had done nasty things to her. This testimony would have impeached Angelina by showing that she made false allegations of sexual assaults or molestations."

This reasoning does not undermine the trial court's determination that the probative value of Angelina's report of abuse to Yasemsky hinged on further evidence from J.L. and N.L. that bore on the veracity of the report. Lewis argues that the trial court erred in finding that the boys could avoid testifying by invoking their privilege against self-incrimination, but he identifies no persuasive basis on which their testimony could have been compelled had they asserted that privilege. Thus, even if the court was premature to analyze the admissibility of their testimony before they took the stand, no error resulted from the ruling.

Lewis argues that he was entitled to require that the court grant the boys judicial use immunity for their testimony because their testimony was necessary for his defense. However, a defendant's "constitutional rights to confrontation and to present a defense" do not "'trump [a witness's] right to remain silent.'" (*People v. Smith* (2007) 40 Cal. 4th 483, 521; *see also In re Williams* (1994) 7

17

Cal. 4th 572, 610 [while judicial use immunity may be conferred in "special cases," it is not available when the testimony "'"relate[s] only to the credibility of the government's witnesses"'".].)

Lewis contends that the boys were not entitled to assert the privilege against self-incrimination because it was unlikely they'd be prosecuted for their testimony. In support of that argument, he observes that authorities had not acted on Yasemsky's report of Angelina's allegations against J.L. and N.L., which was made in 2007, years before the 2011 trial. He notes also that any abuse the boys admitted occurred when they were under the age of 14, and could be presumed to be incapable of committing a crime. (Pen. Code, § 26 ["[a]ll persons are capable of committing crimes except . . . [¶] . . . [c]hildren under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness"]; *Timothy J. v. Superior Court* (2007) 150 Cal. App. 4th 847, 862.)

We conclude that the boys had the right to invoke the privilege. The privilege against self-incrimination "'must be accorded liberal construction in favor of the right it was intended to secure.'" (*People v. Smith*, *supra*, 40 Cal. 4th at p. 520.) "In assessing whether the court [could] properly allow [a witness] to invoke the privilege against self-incrimination, we need not decide whether his testimony actually would have incriminated him, but rather whether it would have given him 'reasonable cause to apprehend danger from the testimony.'" (*Ibid.*) The boys could reasonably believe they would be at risk of prosecution if they admitted molesting Angelina. Accordingly, the court correctly anticipated that the testimony Lewis hoped to elicit could not be admitted.

Nor are we persuaded that exclusion of the boys' testimony was prejudicial. J.L.'s counsel advised that testimony about his client's sexual activity might be incriminating, and that N.L.'s counsel's "position is identical to mine." Thus, if the boys were forced to testify on the subject, they would likely have admitted sexual activity with Angelina. Lewis claims that such testimony would have impugned Angelina's credibility because she testified that she did not have sexual contact with them. But all she said was that she could not recall such contact, not that it never occurred. Rather than impugn her, admissions that the boys molested Angelina would have bolstered her credibility because it would have shown that her 2007 report of that abuse was truthful. On the other hand, if the boys denied abusing Angelina after "taking the Fifth," their testimony would likely have been greeted with some skepticism.

Lewis asserts that "the proffered evidence was not just the heart of [his] defense; it was his entire defense to [the count involving Angelina]." But even though the charge hinged on Angelina's credibility, Lewis had multiple grounds to challenge the veracity of her reports at age six without delving into her allegations against J.L. and N.L. For example, during her August 2007 interview, she repeatedly said that Lewis molested her every time she went to his house. At trial, she said that he abused her only four or five times. She told the interviewer that she screamed and hollered when Lewis molested her, but she did not say that at trial. She testified at trial

that Palmer's other foster children were at Lewis's house, where they could have been expected to hear her screams when Lewis molested her. Angelina admitted lying in her 2007 interview. At several points in the interview she said that she forgot what Lewis had done to her. She said at trial this was not true, and that she claimed to have forgotten what happened because she was nervous talking about it. Angelina also admitted lying to Palmer when she lived with her: "Q. Angelina, when you lived with Nanny [Palmer], did you ever lie about anything with her? A. Yes. Q. And what kind of things would you lie about? A. I don't remember."

Exclusion of credibility evidence does not implicate a defendant's constitutional rights unless the evidence would have produced a significantly different impression of the witness's veracity. (*See People v. Hillhouse* (2002) 27 Cal. 4th 469, 494.) Given the jury's opportunity to observe Angelina's demeanor on the witness stand and at her videotaped 2007 interview, the inconsistencies in her accounts of what transpired with Lewis, and her admitted prevarications, evidence of her possible abuse by J.L. and N.L. would not have created a significantly different impression of her credibility. Any error in excluding the evidence was one of state law only, and it is not reasonably probable that admission of the evidence would have changed the result. (*People v. Watson* (1956) 46 Cal. 2d 818, 836.)

Answer, Ex. 10 at 12-15 (footnote omitted).

Lewis is not entitled to relief for this claim. There is no Supreme Court authority that the exclusion of evidence to impeach a witness' credibility violates the Constitution. *Jackson*, 133 S. Ct. at 1994. The state court's denial of this claim cannot therefore be an unreasonable application of Supreme Court authority. To the extent that Lewis argues the state court erred under state law by excluding the testimony, he is not entitled to relief. *See Estelle*, 502 U.S. at 67-68 (federal habeas relief unavailable for violations of state law or for alleged error in the interpretation or application of state law).

Nor has Lewis demonstrated a due process violation by the exclusion of the evidence. Both the trial and appellate court carefully examined the evidence and the impact it may have had on the trial. It was noted that the witnesses, who had been appointed attorneys by the court, intended to invoke their Fifth Amendment rights, so the evidence would not have been presented. Finally, the California Court of Appeal noted that the victim testified that she could not remember if the witnesses had abused her, rather than denying it as Lewis erroneously argues. The California Court of Appeal also highlighted other inconsistencies of the victim's testimony that had been available to question her credibility. The state court's decision was not unreasonable.

19

1  Even if there was an error, Lewis has failed to demonstrate that it had a substantial and injurious

2  effect on influencing the jury's verdict.  This claim is denied.

3      **IV.  PROPENSITY EVIDENCE**

4        Lewis contends that California Evidence Code section 1108, and its related jury

5  instruction, CALCRIM No. 1191, are facially unconstitutional because they permit the use of a

6  defendant's other sex crimes to show a propensity to commit such crimes.

7      **Background**

8        California Evidence Code section 1101 generally excludes evidence that is presented to

9  prove propensity.  However, the state legislature carved out an exception to section 1101 by

10  enacting Evidence Code section 1108, which allows admission of evidence of uncharged sexual

11  offenses in a criminal action where the defendant is charged with a sexual offense, provided the

12  probative value exceeds its prejudicial effect under Evidence Code section 352.

13        In *People v. Reliford*, 29 Cal. 4th 1007 (2003) the California Supreme Court found "no

14  constitutional error" in the 1999 version of CALJIC 2.50.01, the predecessor of CALCRIM 1191.

15  *Id.* 1016.  "The version of CALJIC 2.50.01 considered in *Reliford* is similar in all material

16  respects to CALCRIM 1191 . . . in its explanation of the law on permissive inferences and the

17  burden of proof."  *People v. Schnabel* 150 Cal. App. 4th 83, 87 (Cal. Ct. App. 2007).[2]  Lewis

18  challenges the testimonies of three witnesses, L.W., S.W., and L.C., who gave Evidence Code

19  section 1108 testimony that he had sexually assaulted them in the distant past.

20      **Legal Standard**

21        A state court's evidentiary ruling is not subject to federal habeas review unless the ruling

22  violates federal law, either by infringing upon a specific federal constitutional or statutory

23  provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process.

24  *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th

25  Cir. 1991).  The U.S. Supreme Court "has not yet made a clear ruling that admission of irrelevant

26  or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of

27

28  [2] Similarly, the Ninth Circuit has already upheld a related version of the CALCRIM instruction. *See Schultz v. Tilton,* 659 F.3d 941, 945 (9th Cir. 2011).

United States District Court
Northern District of California

the writ." *Holley v. Yarborough,* 568 F.3d 1091, 1101 (9th Cir. 2009).  In fact, the Supreme Court has left open the question of whether admission of propensity evidence violates due process. *Estelle,* 502 U.S. at 75 n.5

Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA.  *Alberni v. McDaniel,* 458 F.3d 860, 866–67 (9th Cir. 2006); *see, e.g., Larson v. Palmateer,* 515 F.3d 1057, 1066 (9th Cir. 2008). Because of the Court's express reservation of the issue, habeas relief does not lie in a state court's admission of propensity evidence under state evidence law.  That admission cannot be contrary to, or an unreasonable application of, clearly established federal law.  *Mejia v. Garcia,* 534 F.3d 1036, 1046 (9th Cir. 2008); *cf. United States v. LeMay,* 260 F.3d 1018 (9th Cir. 2001).

Assuming there was a clearly established law that a petitioner has a due process right regarding the admission of propensity evidence, the due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  *See Walters v. Maass,* 45 F.3d 1355, 1357 (9th Cir. 1995); *Jammal*, 926 F.2d at 919.  "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision."  *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005).  The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990).  The Ninth Circuit has noted that the admission of evidence violates due process only if "there are *no* permissible inferences the jury may draw from the evidence."  *Jammal*, at 920.  Moreover, the Ninth Circuit has held that Federal Rule of Evidence 414, which is analogous to section 1108 of the state evidence code, does not violate the right to due process.  *LeMay,* 260 F.3d at 1027.

**Discussion**

The California Court of Appeal rejected Lewis' challenge to the statute and accompanying jury instruction as follows:

> To preserve the argument for federal court review, Lewis contends that Evidence Code section 1108, which permits the use of a defendant's other sex crimes to show a propensity to commit such

> crimes, and the related standard jury instruction (CALCRIM No. 1191), are unconstitutional.  He recognizes that this same challenge to the statute was rejected in *People v. Falsetta* (1999) 21 Cal.4th 903, 907, and that we are required to follow that decision.  We are also bound to follow our Supreme Court's decision approving a standard instruction with essentially the same language as CALCRIM No. 1191. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1009, 1011–1012 [considering the 1999 version of CALJIC No. 2.50.01].)  Accordingly, we reject Lewis's challenges to the statute and instruction.

Answer, Ex. 10 at 15-16.

Since the Supreme Court has reserved the issue as an "open question," the admission of propensity evidence cannot be contrary to, or an unreasonable application of, clearly established federal law.  *See Mejia,* 534 F.3d at 1046.  Additionally, the Ninth Circuit has upheld analogous versions of section 1108 and CALCRIM No. 1191.  *See Schultz,* 659 F.3d at 945; *LeMay,* 260 F.3d at 1027.  Lewis is not entitled to relief.

Regardless, the exclusion of the witness testimonies was not arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  The trial court had examined the records and concluded that the propensity evidence was relevant, probative, and not particularly inflammatory.  Reporter's Transcript at 1411-15.  Furthermore, the trial court had reduced the number of section 1108 witnesses to reduce the prejudicial effect the evidence had on Lewis.  *Id*. at 1415.  Thus, Lewis has failed to show a due process violation based on the evidentiary decision to admit the witness testimonies.  This claim is denied.

### V.      INEFFECTIVE ASSISTANCE OF COUNSEL

Lewis also contends that trial counsel was ineffective for failing to preserve some arguments in support of claim three above, regarding the testimony of his children to impeach the victim.

### Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  *Id*.

United States District Court
Northern District of California

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

**Discussion**

The California Court of Appeal denied this claim noting, "[c]onsistent with our conclusions that excluding the J.L. and N.L. evidence was neither erroneous nor prejudicial, we reject Lewis's contention that his trial counsel was incompetent for failing to make all of the arguments challenging its exclusion that he raises on appeal.  (*Strickland v. Washington* (1984) 466 U.S. 668, 694 [different result must have been reasonably probable absent counsel's failings].)"  Answer, Ex. 10 at 15.

Lewis did not raise the ineffective assistance of counsel claim to the California Supreme Court.  Answer, Ex. 11.  However, federal courts are specifically empowered to deny a petition filed by a state prisoner on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).  This procedure should be utilized "only when it is perfectly clear that the applicant does not raise even a colorable federal claim."  *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).  The Court will look to the merits of the claim.

Lewis has failed to demonstrate the state court denial of this claim was unreasonable. Lewis does not identify the additional arguments that counsel should have made, and the arguments that were made by counsel were properly denied by the state courts as discussed in claim three.  There was no error in excluding the witnesses' testimony, and Lewis has not identified any additional arguments to demonstrate that there was any error.  This claim is denied.

## VI.    CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability.  *See* Rules Governing § 2254 Cases, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard.  *Id.* § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has made no showing warranting a certificate and so none is granted.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**.  A Certificate of Appealability is **DENIED**.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

**IT IS SO ORDERED.**

Dated:  November 22, 2016

_____
JAMES DONATO
United States District Judge

24

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JULIUS W. LEWIS,

         Plaintiff,

    v.

STU SHERMAN,

         Defendant.

Case No.  15-cv-02597-JD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 22, 2016, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Julius W. Lewis ID: AK7084
Corcoran State Prison Building E-5 122
P.O. Box 5242
Corcoran, CA 93212

Dated: November 22, 2016

Susan Y. Soong
Clerk, United States District Court

By: *Lisa R. Clark*
LISA R. CLARK, Deputy Clerk to the
Honorable JAMES DONATO